IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAMAR S. HILL,

      Petitioner,

v.                                          Civil Action No. **3:12CV174**

HAROLD W. CLARKE,

      Respondent.

## MEMORANDUM OPINION

Lamar S. Hill, a Virginia state prisoner proceeding by counsel and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging his conviction in the Circuit Court of the City of Richmond, Virginia ("Circuit Court") for possession of crack cocaine with intent to distribute. By Memorandum Opinion and Order entered March 20, 2013, the Court dismissed Claim Two and the state law portions of Claims Three and Four, denied Respondent's Motion to Dismiss in part, and ordered Respondent to file further briefing. *Hill v. Clarke*, No. 3:12CV174, 2013 WL 1165256, at *1, *6 (E.D. Va. Mar. 20, 2013). By Memorandum Opinion and Order entered January 4, 2014, the Court dismissed Claims Three and Four and appointed counsel for Hill for further briefing on Claim One. *Hill v. Clarke*, No. 3:12CV174, 2014 WL 31496, at *5–6 (E.D. Va. Jan. 4, 2014). In his remaining claim, Hill argues entitlement to relief based upon the following:[1]

    Claim One:    "The Supreme Court of Virginia erred in finding that Hill was not 'in custody' for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966) and that the trial court properly denied his motion to

---

[1] Hill lists his claims in bold. The Court removes the emphasis from the quotations to Hill's submissions.

suppress" amounting to a due process violation.[2]   (Br. Supp. § 2254 Pet. 6 (emphasis added).)

Hill, by counsel, filed a supplemental brief and seeks to amend to add an additional claim. (ECF No. 26.) Respondent renews his Motion to Dismiss the § 2254 Petition, arguing that Claim One lacks merit. (ECF No. 27) Hill filed a reply. (ECF No. 28.) The matter is ripe for disposition. For the reasons discussed below, the Court finds that the Supreme Court of Virginia's determination that Hill was not in custody when he made his initial statement to police was an unreasonable application of clearly established federal law. Thus, Hill's initial statement should have been suppressed. Nevertheless, as explained below, the Court finds this error was harmless.

## I. PROCEDURAL HISTORY

Following a bench trial, the Circuit Court convicted Hill of possession of a Schedule I or II controlled substance[3] with the intent to distribute, and sentenced him to ten years, with five years suspended. *Commonwealth v. Hill*, CR08–F–2419, at 1–2 (Va. Cir. Ct. Dec. 22, 2009). Hill appealed this decision to the Court of Appeals of Virginia, raising largely the same claims he advances in the instant § 2254 Petition. Petition for Appeal at ii, *Hill v. Commonwealth*, No. 0149–10–2 (Va. Ct. App. filed May 25, 2010). The Court of Appeals of Virginia denied the petition for appeal. *Hill v. Commonwealth*, No. 0149–10–2, at 1 (Va. Ct. App. July 21, 2010). Thereafter, a three-judge panel of the Court of Appeals of Virginia also denied the petition. *Hill v. Commonwealth*, No. 0149–10–2, at 1 (Va. Ct. App. Sept. 22, 2010). Hill raised the same claims he advanced in the Court of Appeals of Virginia before the Supreme Court of Virginia. Petition for Appeal 3–4, *Hill v. Commonwealth*, No. 101955 (Va. filed Oct. 18, 2010). The

---

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[3] While the Circuit Court's judgment fails to list the type of drug, both parties state throughout their submissions that Hill possessed crack cocaine.

Supreme Court of Virginia refused Hill's subsequent petition for appeal. *Hill v. Commonwealth*, No. 101955, at 1 (Va. Mar. 15, 2011).

Hill filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. *See* Petition for Writ of Habeas Corpus 1, *Hill v. Dir. Dep't of Corr.*, No. 111860 (Va. filed Oct. 24, 2011). The Supreme Court of Virginia dismissed the petition, finding all of the claims barred by the rule of *Henry v. Warden, Riverside Reg'l Jail*, 576 S.E.2d 495 (Va. 2003),[4] because the issues were raised or decided in the trial court or on direct appeal. *Hill v. Dir. Dep't of Corr.*, No. 111860, at 1 (Va. Jan. 17, 2012).

## II.   THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[4] "[A] non-jurisdictional issue raised and decided either in the trial *or* on direct appeal from the criminal conviction will not be considered in a habeas corpus proceeding." *Henry*, 576 S.E. 2d at 496.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## III.   SUMMARY OF THE EVIDENCE

The Court of Appeals of Virginia aptly summarized the evidence leading to Hill's arrest as follows:

> At 9:02 p.m. on January 26, 2008, Officer Black and his partner, Officer Custer, effected a traffic stop[5] of a car in which the appellant was a passenger. The location of the stop was a high-crime area. Black smelled the odor of marijuana emanating from the car, so he and Custer had the driver and appellant exit the car. Black detained and handcuffed the driver, and Custer detained and handcuffed appellant. The officers had both men wait at the rear of their car. Detective Phillips arrived shortly after the men were handcuffed. Black and Custer advised Phillips they detected the odor of marijuana.
>
> Phillips had a partner with him, but the partner, Detective Marsh, remained in Phillips' police car and never exited or got involved. Phillips approached appellant and detected a strong odor of marijuana on his person. During a weapons pat down, Phillips felt a small round lump inside appellant's pants near his inside thigh and asked appellant what it was. Appellant said it was a little bag of "hard," which is slang for crack cocaine.[6] Phillips then asked appellant if he (appellant) could retrieve it, which appellant did. The bag appellant removed from his pants contained two plastic baggies, one with a piece of suspected crack cocaine and the other contained suspected marijuana. Fifteen minutes after the traffic stop was initiated, Phillips advised appellant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Hill v. Commonwealth*, No. 0149–10–2, at 2 (Va. Ct. App. July 21, 2010).

---

[5] During the exclusion hearing, Detective Phillips testified that a cooperating informant provided information prior to the traffic stop of Hill that Hill possessed contraband. (Mar. 20, 2009 Tr. 10.) Detective Brandon Black also testified that while working patrol he received a phone call to keep an eye out for a vehicle with Hill as passenger and to attempt to make a traffic stop. (Mar. 20, 2009 Tr. 36.) Detective Black observed the vehicle and "[i]t rolled the stop sign" and then "made the right hand turn onto O Street failing to signal." (Mar. 20, 2009 Tr. 36.) Based upon these traffic infractions, Detective Black initiated the traffic stop. (Mar. 20, 2009 Tr. 37.)

[6] The Court refers to this statement as Hill's "initial statement."

4

After waiving his *Miranda* rights,

> appellant admitted selling crack cocaine and told [Detective] Phillips "[h]e has never used crack." Appellant said he only sells to "[fein]s," slang for addicted users, and stated he did so to make money for his family.[7] There was no evidence the police found paraphernalia with which to personally consume the crack cocaine.
>
> . . . .
>
> In addition to appellant's admission that he sold crack cocaine and his denial that he consumed it, the police found crack cocaine hidden on appellant's person, and they did not recover any pipes or other paraphernalia suggestive of personal use. That evidence sufficiently corroborated appellant's incriminating admission. Accordingly, the trial court did not err in finding sufficient competent and credible evidence to prove appellant's guilt beyond a reasonable doubt.

*Id.* at 4–5 (second alteration in original).

## IV. MOTION TO SUPPRESS

### A.    Hill Was in Custody for Purposes of *Miranda*

In Claim One, Hill contends that the Supreme Court of Virginia erred in finding the Circuit Court properly denied Hill's motion to suppress and finding Hill "was not 'in custody' for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966)," with respect to Hill's initial statement. (Br. Supp. § 2254 Pet. 6 (emphasis added).) Hill claims that because the officers smelled marijuana, required Hill to step out of the car, placed Hill in handcuffs, and then asked him about the lump in his pants, "a reasonable person in his position would believe he or she was indeed in custody." (*Id.* at 7.) Hill argues that when he made the statement "'it was just a little bag of hard,'" he "was in custody." (*Id.* at 8.) Thus, he argues that this statement, made before his formal arrest and before receiving *Miranda* warnings, "should have been suppressed." (*Id.*; Supp'l Mem. Supp. § 2254 Pet. 7.) This Court agrees.

*Miranda* warnings are required when an individual is subjected to custodial interrogation. *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (citations omitted). *Miranda*

---

[7] For ease of reference, these statements will be referred to as Hill's "post-*Miranda* confession."

warnings are required "in all settings in which [an individual's] freedom of action is curtailed in any significant way." *Miranda*, 384 U.S. at 467. Generally, no *Miranda* custody exists for a person detained as a result of a traffic stop because this type of detention fails to "'sufficiently impair [the detained person's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.'" *Howes v. Fields*, 132 S. Ct. 1181, 1190 (2012) (alteration in original) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984)); *United States v. Sullivan*, 138 F.3d 126, 130–31 (4th Cir. 1998) ("In short, while a motorist during a routine traffic stop is detained and not free to leave, the motorist is not 'in custody' for *Miranda* purposes.") Rather, "*Miranda* warnings are required only when the motorist is detained to an extent analogous to an arrest." *Sullivan*, 138 F.3d at 131.

Officers making routine traffic stops "are authorized to 'take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *Leshuk*, 65 F.3d at 1109 (alteration in original) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). "A brief but complete restriction of liberty is valid" during a routine traffic stop. *United States v. Jones*, 27 F. App'x 198, 200 (4th Cir. 2001) (citing *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir. 1987)). Therefore, "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest." *Leshuk*, 65 F.3d at 1109–10 (citations omitted).

The Court of Appeals of Virginia summarized the evidence from the exclusion hearing as follows:

> Here, three police officers investigated a possible drug crime following a traffic stop involving two suspects. The interaction occurred in a Richmond neighborhood around 9:00 p.m. During the *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] investigation, the officers removed the occupants of the car and detained them

with handcuffs outside their car. Fifteen minutes after the traffic stop, Phillips felt an object and asked appellant what it was. After appellant indicated the object was crack cocaine and removed it, Phillips *Mirandized* him. Although the two men were handcuffed, none of the officers displayed a firearm or otherwise restrained the men. Moreover, although the officers smelled marijuana and had received information that appellant possessed drugs, they did not relay that information to appellant.

      The officers had reasonable, articulable suspicion the occupants were committing a crime, thus they were justified in temporarily detaining the suspects while they were investigated further. [citation omitted] Moreover, the detention was very brief and involved only three officers. Under the circumstances, appellant was neither formally arrested nor deprived of his freedom of movement to the degree associated with a formal arrest at the time Phillips asked him about the object. [citation omitted] Accordingly, the trial court did not err in so finding and in refusing to suppress the pre-*Miranda* statement.

*Hill v. Commonwealth*, No. 0149–10–2, at 3–4 (Va. Ct. App. July 21, 2010).

As explained below, the Court finds that the state court's application of clearly established federal law was unreasonable as to the determination that Hill was not in custody for purposes of *Miranda*. *See* 28 U.S.C. § 2254(d). Nevertheless, ultimately that error was harmless.

The following evidence leads the Court to the conclusion that Hill was in custody: After observing the driver of the vehicle in which Hill was a passenger commit two traffic violations, Detective Black and Officer Custer initiated a traffic stop of the vehicle. (Mar. 20, 2009 Tr. 36–37.) The stop occurred in a high crime area at night. (Mar. 20, 2009 Tr. 33–34.) Detective Black smelled marijuana coming from the vehicle and relayed this information to Officer Custer. (Mar. 20, 2009 Tr. 37–39.) Detective Black first asked the driver to exit the car and placed him in handcuffs. (Mar. 20, 2009 Tr. 39–41.) Subsequently, Officer Custer asked Hill to exit the vehicle and placed him in handcuffs. (Mar. 20, 2009 Tr. 39–41, 48–49.)

Detective Phillips arrived on the scene after Hill had been placed in handcuffs. (Mar. 20, 2009 Tr. 10–11.) Detective Phillips smelled marijuana emanating from Hill's person. (Mar. 20,

7

2009 Tr. 12.) Detective Phillips then conducted a weapons pat-down of Hill. (Mar. 20, 2009 Tr. 11–12, 23.) During the pat-down, Detective Phillips felt a "lump" on the inside of Hill's left thigh near the knee and asked Hill about it. (Mar. 20, 2009 Tr. 13, 24–27, 31.) In response to Detective Phillip's question, Hill informed Detective Phillips that the object "was just a little bag of hard" which Phillips knew from experience was a phrase for crack cocaine. (Mar. 20, 2009 Tr. 13–14, 27.) Detective Phillips then asked Hill to remove the drugs from his pants. (Mar. 20, 2009 Tr. 14–15, 27.) Once Hill removed the drugs, Detective Phillips gave Hill *Miranda* warnings. (Mar. 20, 2009 Tr. 29.)

Here, a period of fifteen minutes elapsed between the initial stop and arrest. Two officers handled the initial traffic stop. After ordering Hill out of the car, the officers placed Hill in handcuffs. Hill remained in handcuffs until Detective Phillips arrived. While Detective Phillips ordered the vehicle be stopped because of the suspicion that Hill and the driver possessed contraband, an officer's "unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; *the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.*" *Berkemer*, 468 U.S. at 442 (citation omitted) (emphasis added). By placing Hill in handcuffs, and detaining him until Officer Phillips arrived, a reasonable man in Hill's position would believe he was in custody when Officer Phillips asked him what was in his pocket. *See New York v. Quarles*, 467 U.S. 649, 655 (1984) (finding individual in "police custody" for *Miranda* when he "was surrounded by at least four police officers and [he] was handcuffed when the questioning . . . took place" and "nothing ... suggest[ed] that any of the officers were any longer concerned for their own physical safety"). Accordingly, based on the foregoing, the state court's determination that Hill was not in custody when he volunteered that he had crack cocaine in his pocket was unreasonable. Thus, *Miranda*

warnings were necessary, and the statement that the object "was just a little bag of hard" was not admissible during trial.

**B.    Admission of the Initial Statement Was Harmless Error**

Despite this Court's conclusion that Hill's unwarned initial statement should have been suppressed, such an "error does not automatically entitle a petitioner to a grant of a writ of habeas corpus. Instead, a habeas court reviews such error for harmlessness." *Wiggins v. Boyette*, 635 F.3d 116, 121 (4th Cir. 2011) (citations omitted). In determining the harmlessness of a state court's constitutional error in a criminal trial, a federal habeas court must ask whether the error, "in light of the record as a whole, . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (internal quotation marks omitted); *see Fowler v. Joyner*, 753 F.3d 446, 459 (4th Cir. 2014); *Wiggins*, 635 F.3d at 121. An error is harmless unless the *petitioner* demonstrates that the error resulted in "actual prejudice." *Brecht*, 507 U.S. at 637 (citation omitted).

As explained in greater detail below, the admission of Hill's initial statement resulted in no actual prejudice. Even if the Circuit Court had suppressed the initial statement, both the crack cocaine and Hill's post-*Miranda* confession were admissible and overwhelmingly established Hill's guilt of possession with intent to distribute crack cocaine. Thus, the admission of the initial statement was harmless.

**1.    The Crack Cocaine Would Have Been Recovered Pursuant to a Search Incident to Lawful Arrest**

On appeal, Hill raised no challenge to the legality of the traffic stop or the Circuit Court's denial of the motion to suppress the seizure of the drugs on Fourth Amendment grounds. *See* Petition for Appeal at ii, *Hill v. Commonwealth*, No. 0149–10–2 (Va. Ct. App. filed May 25, 2010). The evidence demonstrated that the officers lawfully stopped the vehicle after they

9

observed the vehicle commit two traffic violations. *Whren v. United* States, 517 U.S, 806, 810 (1996). The uncontroverted evidence then demonstrated that the smell of marijuana emanated from the vehicle and, subsequently, from Hill's person. The United States Court of Appeals for the Fourth Circuit has stressed: "We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) (reaffirming that "the smell of marijuana emanating from a properly stopped automobile constituted probable cause to believe that marijuana was in the vehicle, justifying its search" (citing *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002))). The same justification applies to the search of a person. *United States v. Teran*, 496 F. App'x 287, 290 (4th Cir. 2012) (citing *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002); *United States v. Haley*, 669 F.2d 201, 203 (4th Cir. 1982)).

Officers Black and Custer had probable cause to search Hill once they smelled marijuana emanating from the car. Nevertheless, instead of searching Hill, they first placed him in handcuffs. Assuming here that Hill was arrested for the purposes of the Fourth Amendment once Officers Black and Custer placed him in handcuffs, the officers had probable cause for the arrest. In the arrest context, probable cause exists when "the totality of the circumstances indicate to a reasonable person that a 'suspect has committed, is committing, or is about to commit' a crime." *Humphries*, 372 F.3d at 659 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "[T]he odor of marijuana emanating from [Hill] was sufficient to provide [Officers Custer and Black] with probable cause to believe marijuana was present on [Hill's] person. And because [the officers] had probable cause to believe [Hill] was presently possessing marijuana, [they] had probable cause to arrest him for the crime of possession." *Id.* at 659–60. This conclusion was bolstered by the fact that Detective Phillips had conveyed to Officers Black and Custer that he

received a tip from a confidential informant that Hill possessed drugs. Once the officers placed Hill under arrest, the marijuana and crack cocaine would have been found through a search incident to lawful arrest. Thus, the officers would have recovered the crack cocaine despite Hill's statement to the police identifying the item in his pants.[8]

Accordingly, even if the Court had suppressed Hill's initial statement identifying the lump as crack cocaine, the crack cocaine was independently admissible on Fourth Amendment grounds.

### 2. The Exclusion of the Initial Statement from Trial is the Complete Remedy for a *Miranda* Violation

Moreover, neither the crack cocaine Hill removed from his pants after his initial statement nor Hill's post-*Miranda* confession, are subject to suppression even if Hill's initial statement had been suppressed. "[T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self-Incrimination Clause" of the Fifth Amendment.[9] *United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality opinion). The "core protection afforded by the Self-

---

[8] Additionally, "[u]nder the 'plain feel' doctrine set forth in *Minnesota v. Dickerson*, 508 U.S. 366 (1993), an officer may seize contraband other than weapons during a lawful *Terry* search if the officer 'feels an object whose contour or mass makes its identity immediately apparent.'" *United States v. Works*, 338 F. App'x 295, 299 (4th Cir. 2009) (quoting *Dickerson*, 508 U.S. at 375) (parallel citation omitted). The officer need not be "'certain that the object . . . [is] contraband'" if the "officer's experience led him to 'reasonably suspect' that the plastic bag in the defendant's pocket contained [drugs]." *Id.* (omission in original) (quoting *United States v. Yamba*, 506 F.3d 251, 260 (3d Cir. 2007)). Detective Phillips testified that when he felt the lump in Hill's pants he suspected the lump to be drugs. Detective Phillips explained that he smelled the odor of marijuana emanating from Hill and had received a tip from the informant that Hill possessed drugs. Thus, based on the circumstances, Detective Phillips could reasonably suspect that Hill had drugs and could seize them.

[9] "No person shall . . . be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Const. amend. V. "[T]he Fifth Amendment's Self-Incrimination Clause is incorporated in the Due Process Clause of the Fourteenth Amendment and thus applies to the States." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citing *Malloy v. Hogan*, 378 U.S. 1, 6–11 (1964)).

Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *Id.* at 637 (citations omitted).

> It follows that police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to provide the suspect with the full panoply of warnings prescribed by *Miranda*. Potential violations occur, if at all, only upon the admission of the unwarned statements into evidence at trial. And, at that point, "[t]he exclusion of unwarned statements . . . is a *complete and sufficient remedy*" for any perceived *Miranda* violation.

*Id.* at 641–42 (emphasis added) (quoting *Chavez v. Martinez*, 538 U.S. 760, 790 (2003) (Kennedy, J., concurring in part and dissenting in part)). Thus, the Self-Incrimination "Clause cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements." *Patane*, 542 U.S. at 637 (citations omitted); *see also United States v. Sterling*, 283 F.3d 216, 218–19 (4th Cir. 2002) (reaffirming that the "fruit of the poisonous tree" doctrine fails to extend to physical evidence discovered after statements obtained in violation of *Miranda*). "[T]his reasoning applies with equal force when the alleged 'fruit' of a noncoercive *Miranda* violation is neither a witness nor an article of evidence but the accused's own voluntary testimony." *Oregon v. Elstad*, 470 U.S. 298, 308 (1985).

### 3.   Voluntariness of Initial Statement Under the Fifth Amendment

Because physical evidence discovered after a *Miranda* violation cannot be "fruit of the poisonous tree," the inquiry turns to the voluntariness of Hill's initial unwarned statement. *See United States v. Elie*, 111 F.3d 1135, 1143 (4th Cir. 1997).[10] "[A] statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause."

---

[10] The Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428, 434 (2000) "held *Miranda* to be with Constitutional significance." *Sterling*, 283 F.3d at 219. Thus, "after *Dickerson*, [the Fourth Circuit's] observation in *Elie* that 'It is well established that the failure to deliver *Miranda* warnings is not itself a constitutional violation,' *Elie*, 111 F.3d at 1142, is no longer the law." *Sterling*, 283 F.3d at 219. Nevertheless, "*Dickerson* did not overrule" the Fourth Circuit's holding in *Elie* that the fruit of the poisonous tree doctrine is inapplicable to evidence discovered as a result of statements obtained in violation of *Miranda*. *Sterling*, 283 F.3d at 218–19.

*Id.* (citing *Elstad*, 470 U.S. at 304).   To determine whether a statement is voluntary under the Due Process Clause, the Court must ask "'whether the confession was extracted by any sorts of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'"   *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (alterations in original) (some internal quotation marks omitted) (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). The Supreme Court has held that "'coercive police activity is a necessary predicate to the finding that a [statement] is not 'voluntary' within the meaning of the Due Process Clause.'"   *Id.* (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *see Elstad*, 470 U.S. at 314 ("[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.").

"The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *Braxton*, 112 F.3d at 780.   Instead, "[t]he proper inquiry 'is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'"   *Id.* at 780–81 (quoting *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)). The Court looks to "'the totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and details of the interrogation." *Id.* at 781 (quoting *Pelton*, 835 F.2d at 1071).

Although Hill was in custody for the purposes of *Miranda* when Detective Phillips asked Hill what he had in his pants, nothing in the record suggests that Hill's unwarned response was a product of coercive police activity or that the officers used any technique or method that would

13

offend due process. *See Elie*, 111 F.3d at 1143.[11]   Moreover, nothing in the record suggests Hill's will was overborne.

Detective Phillips did not harm or threaten to harm Hill if he refused to answer Phillips's question.   Detective Phillips did not deprive Hill of anything, and Detective Phillips did not attempt to deceive Hill or use improper influence. *See Braxton*, 112 F.3d at 780; *Elie*, 111 F.3d at 1143; *see also Connelly*, 479 U.S. at 164 n.1 (citing cases illustrating coercive police conduct). Moreover, Detective Phillips asked Hill one question, thus he did not subject Hill to a lengthy period of interrogation. *See, e.g., Braxton*, 112 F.3d at 785 (finding "confession not involuntary" when interview only one hour); *Elie*, 111 F.3d at 1143.   The fact that police had placed Hill in handcuffs standing alone fails to establish involuntariness. *See Elie*, 111 F.3d at 1144 (alterations in original) (reaffirming that "neither the drawing of a gun by the interrogating officer nor the handcuffing of the confessor 'establish[es] involuntariness in and of [itself]'" (quoting *United States v. Seni*, 662 F.2d 277, 281 (4th Cir. 1981))).   The lack of police coercion alone warrants a finding that Hill's statement was voluntary. *Connelly*, 479 U.S. at 167.

Finally, nothing in the record such as youth, diminished capacity, or lack of education suggests that Hill was especially susceptible to police coercion.   In sum, the totality of the circumstances fails to reveal any duress or coercion or that Hill's will was overborne.   As a result, Hill's initial statement to police was voluntary under the Fifth Amendment.   Thus, the crack cocaine recovered from Hill's pocket after his unwarned statement was not subject to suppression. *See Patane*, 542 U.S. at 643 ("introduction of the nontestimonial fruit of a

---

[11] As previously noted, during the pat-down, Detective Phillips felt a "lump" on the inside of Hill's left thigh near his knee and asked Hill about it.   (Mar. 20, 2009 Tr. 13, 24–27, 31.)   In response to Detective Phillips's question, Hill immediately informed Detective Phillips that the object "was just a little bag of hard." (Mar. 20, 2009 Tr. 13–14, 27.)   Detective Phillips then asked Hill to remove the drugs from his pants.   (Mar. 20, 2009 Tr. 14–15, 27.)   Detective Phillips's question of Hill after feeling the item in his pants fails to amount to coercive police conduct.

voluntary statement . . . does not implicate the Self-Incrimination Clause); *Sterling*, 283 F.3d at 218–19 (explaining that handgun found as a result of restrained defendant's unwarned statement in response to police question was admissible).

### 4.    Hill's Post-*Miranda* Confession Was Admissible

"Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." *Elstad*, 470 U.S. at 309.  Accordingly, "a careful and thorough administration of *Miranda* warnings serves to cure the condition that rendered the unwarned statement inadmissible.  The warning conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an act of free will." *Id.* at 310–11 (citation omitted) (internal quotation marks omitted); *see Dickerson*, 530 U.S. at 444 ("The requirement that *Miranda* warnings be given does not . . . dispense with the voluntariness inquiry.  But . . . '[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was compelled despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.'" (quoting *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) (internal quotation marks omitted))).

After Hill informed Detective Phillips that the object in his pants "was just a little bag of hard," Detective Phillips asked Hill to remove the drugs from his pants.  (Mar. 20, 2009 Tr. 13–15, 27.)  Hill responded that he would remove the drugs if Detective Phillips would move his handcuffs to the front and Phillips did so.  (Mar. 20, 2009 Tr. 14, 27–28.)  Hill removed the drugs and flipped them on the back of the car.  (Mar. 20, 2009 Tr. 14, 29.)  Detective Phillips then gave Hill *Miranda* warnings.  (Mar. 20, 2009 Tr. 29.)  Detective Phillips testified that Hill seemed really nervous during the traffic stop, but after removing the drugs from his pocket "he

was calm and cool" and "cooperative." (Mar. 20, 2009 Tr. 16.)  Hill then provided his name, explained that he started selling drugs again after he got out of jail in December 2007, and then admitted to selling crack cocaine and stated that "[h]e has never used crack." (Mar. 20, 2009 Tr. 16–17.) Hill further stated that he only sold to "feins," slang for addicted users, and did so to make money for his family. (Mar. 20, 2009 Tr. 17.)

Nothing in the record demonstrates that Hill's post-*Miranda* confession was involuntary. *See Elstad*, 470 U.S. at 310–11; *Dickerson*, 530 U.S. at 444. The record reveals neither coercive police activity nor facts establishing that Hill's will was overborne. Instead, after hearing his *Miranda* rights, Hill spoke freely with Detective Phillips and stated that he sold crack cocaine and never used it. Thus, Hill's statement to Detective Phillips must be viewed as an act of free will. *See Dickerson*, 530 U.S. at 444; *Elstad*, 470 U.S. at 310–11. Hill's post-*Miranda* statement about his crack cocaine distribution was not subject to suppression.

### 5.      Overwhelming Evidence of Guilt Existed Despite Error

Even concluding that the Circuit Court erred in admitting Hill's initial statement, the error did not have a "'substantial and injurious'" impact on the verdict. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In light of the crack cocaine officers found in Hill's pocket and Hill's post-*Miranda* confession to police that he sold crack cocaine, even excluding Hill's initial statement, no reasonable jury would have returned a verdict other than guilty of possession with intent to distribute crack cocaine. Thus, any error in admitting Hill's initial statement was harmless for purposes of federal habeas review. Accordingly, Claim One will be DISMISSED.

## V.     HILL'S NEW CLAIM

In the further briefing submitted by appointed counsel, Hill seeks to raise a new claim not previously presented in his § 2254 Petition.  Hill seeks to add the following proposed amended claim:

> Claim Five:     "Trial Counsel Was Ineffective by Failing to Adequately Object at Both the Suppression Hearing and at Trial to Introduction of Hill's Alleged Statements to Officer Phillips Regarding Selling Crack Cocaine and Never Using Crack Cocaine[.]"  (Pet'r's Supp'l Br. 13, ECF No. 26.)

Hill has not received permission to amend his § 2254 Petition to add Claim Five.  "[H]abeas applications 'may be amended . . . as provided in the rules of procedure applicable to civil actions.'"  *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (omission in original) (quoting 28 U.S.C. § 2242).  Under Federal Rule of Civil Procedure "15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment."  *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citing cases).  Leave to amend is appropriately denied as futile when, as is the case here, the statute of limitations bars the new claim.  *See Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011).

### A.     Statute of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.  Specifically, 28 U.S.C. § 2244(d) now reads:

> 1.     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

17

(A)    the date on which the judgment became final by the
        conclusion of direct review or the expiration of the time for
        seeking such review;

(B)    the date on which the impediment to filing an application
        created by State action in violation of the Constitution or
        laws of the United States is removed, if the applicant was
        prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was
        initially recognized by the Supreme Court, if the right has
        been newly recognized by the Supreme Court and made
        retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or
        claims presented could have been discovered through the
        exercise of due diligence.

2.    The time during which a properly filed application for State post-
        conviction or other collateral review with respect to the pertinent judgment
        or claim is pending shall not be counted toward any period of limitation
        under this subsection.

28 U.S.C. § 2244(d).  As explained below, § 2244(d)(1)(A) controls the commencement

of the statute of limitations in this matter.

## B.    Commencement of the Limitation Period

Hill's judgment became final for the purposes of the AEDPA on Wednesday, June 13,

2011, the last day to file a petition for certiorari in the Supreme Court of the United States.  *Hill*

*v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running

when direct review of the state conviction is completed or when the time for seeking direct

review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Sup.Ct. R. 13(1) (stating  that

petition for certiorari should be filed within ninety days of the entry of judgment by state court of

last resort or of the order denying discretionary review).  The statute of limitations began to run

the next day, June 14, 2011.

### C.   Running of the Statute of Limitations

The statute of limitations ran for one hundred and thirty-two days (132), from June 14, 2011, until October 24, 2011, when Hill filed his petition for a writ of habeas corpus with the Circuit Court. *See* 28 U.S.C. § 2244(d)(2). Upon the dismissal of that petition on January 17, 2012, the statute of limitations commenced running again. At that juncture, Hill had two hundred and thirty-three days (233), or until Friday, September 7, 2012, to file claims for federal habeas relief. Hill failed to file Claim Five with this Court until February 4, 2014. (Pet'r's Supp'l Br. 1.) Thus, the statute of limitations bars Claim Five unless Hill demonstrates entitlement to a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(B)–(D), equitable tolling, or that Claim Five relates back to the claims in his timely filed § 2254 Petition.

Neither Hill nor the record suggests any circumstances that would warrant a belated commencement of the limitation period or equitable tolling.[12] Hill also makes no argument that Claim Five relates back to the claims in his § 2254 Petition. Moreover, as discussed below, the Court on its own initiative has reviewed of the record and fails to discern that Claim Five relates back to the claims in his § 2254 Petition.

### D.   Relation Back

Although Hill filed his original § 2254 Petition within the limitation period, Claim Five fails to relate back to that submission for purposes of the statute of limitations. The Supreme

---

[12] Hill suggests that the Court can ignore the statute of limitations in light of the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The decision in *Martinez* "relates to excusing a procedural default of ineffective-trial-counsel claims in an initial § 2254 petition . . . ." *Lambrix v. Sec'y, Fla. Dep't Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014). The decision in *Martinez* fails to provide any basis for avoiding the statute of limitations set forth in 28 U.S.C. § 2244(d). *Id.* at 1262 (citing *Chavez v. Sec'y, Fla. Dep't Corr.*, 742 F.3d 940, 946–47 (11th Cir. 2014); *Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014)).

Court has stated that, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664. Nevertheless, an amended claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. In this regard, it is not sufficient that the new claim simply has the same form as the original claims if the new claim "arises out of wholly different conduct." *Pittman*, 209 F.3d at 318.

In his § 2254 Petition, Hill failed to raise any Sixth Amendment challenge to the effectiveness of counsel. While Hill raised a claim that the Circuit Court erred in admitting his post-*Miranda* confession in violation of state evidentiary rules and due process (Claim Three), Claim Five fails to relate back to Hill's original claim because the new claim constitutes a different type of claim. *Pittman*, 209 F.3d at 318 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999)); *see United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (holding claim of alleged ineffective assistance based on counsel's failure to explain consequences of guilty plea failed to relate back to claim alleging due process violation based on trial court's failure to advise defendant of same); *see also Schneider v. McDaniel*, 674 F.3d 1144, 1151–52 (9th Cir. 2012) (holding no relation-back because claims of trial counsel's alleged failures "are different in type" from claims of trial court's alleged errors).[13]   Accordingly, Hill's attempt to amend his § 2254 Petition will be DENIED.

## VI.   CONCLUSION

For the foregoing reasons, Hill's § 2254 Petition is DENIED. The action is DISMISSED. An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a

---

[13] Hill's new Claim Five argues that *counsel* failed to properly raise a state law and due process objection to Hill's post-*Miranda* confession.

certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A).  A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Hill fails to meet this standard.  A COA will be DENIED.

An appropriate Final Order shall issue.

/s/

John A. Gibney, Jr.
United States District Judge

Date: 11/14/14
Richmond, Virginia